# EXHIBIT A

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

 

**Washington Mutual**

Multistate

## NOTE

October 13th, 1998

1627 6TH AVE SW, PUYALLUP, WA 98371

_(Property Address)_

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means WASHINGTON MUTUAL BANK, a Washington Corporation
_____ its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED THIRTEEN THOUSAND FORTY-FOUR & 00/100---
Dollars (U.S. $ 113,044.00----- ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX & ONE-HALF
per cent ( 6.500 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on December, 1998. Any principal and interest remaining on the 1st day of November, 2028 will be due on that date, which is called the maturity date.

**(B) Place**
Payment shall be made at WASHINGTON MUTUAL BANK, 1201 THIRD AVENUE, SEATTLE, WA 98101
_____ ; or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $714.52 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Growing Equity Allonge ☐ Graduated Payment Allonge ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR
per cent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

Case 19-42329 BDL  Doc 35-1  Filed 10/25/19  Ent. 10/25/19 16:23:29  Pg. 2 of 21


## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

X _Ericka A. Michal_
ERICKA A MICHAL

# ALLONGE TO MORTGAGE NOTE

**NOTE DATED:** October 13, 1998

**LOAN AMOUNT:** 113,044.00

**MORTGAGOR:** Ericka A. Michal

**PROPERTY ADDRESS:** 1627 6TH AVE SW
PUYALLUP, WA 98371

Allonge to one certain Mortgage Note dated October 13, 1998 in favor of
WASHINGTON MUTUAL BANK, a Washington Corporation, executed by
Ericka A. Michal

**Pay to the order of JPMorgan Chase Bank, National Association**

**Without Recourse**

**SELLER:** JPMORGAN CHASE BANK, N.A. SUCCESSOR IN
INTEREST BY PURCHASE FROM THE FEDERAL
DEPOSITINSURANCE CORPORATION, AS RECEIVER
FOR WASHINGTON MUTUAL BANK

**BY:** *Leatrice N. Rogers*
Leatrice N. Rogers/Assistant Vice President
Authorized Officer

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48



# National Information Center

A repository of financial data and institution characteristics
collected by the Federal Reserve System

| NIC Home | | Institution Search | | USBA Search | | Top 50 BHCs | |
| BHCPR Peer Reports | | | FAQ | | | | |

**Institution History for** WASHINGTON MUTUAL BANK (1222108)

6 institution history record(s) found.      < Previous  Page  1  ⸱ ᵣ  Next >

| Event Date | Historical Event |
|---|---|
| 1988-09-06 | AMERICAN SAVINGS, A FEDERAL SAVINGS AND LOAN ASSOCIATION located at 343 EAST MAIN STREET, STOCKTON, CA was established as a Savings & Loan Association. |
| 1988-12-28 | AMERICAN SAVINGS, A FEDERAL SAVINGS AND LOAN ASSOCIATION was **renamed** to AMERICAN SAVINGS BANK, F. A. and **moved** to 400 EAST MAIN STREET STOCKTON, CA and **changed** from Savings & Loan Association to Federal Savings Bank. |
| 1997-10-01 | AMERICAN SAVINGS BANK, F. A. was **renamed** to WASHINGTON MUTUAL BANK, FA. |
| 2005-04-04 | WASHINGTON MUTUAL BANK, FA was **renamed** to WASHINGTON MUTUAL BANK. |
| 2005-09-23 | WASHINGTON MUTUAL BANK **moved** to 2273 NORTH GREEN VALLEY PARKWAY HENDERSON, NV. |
| 2008-09-26 | WASHINGTON MUTUAL BANK **failed**. JPMORGAN CHASE BANK, NATIONAL ASSOCIATION acquired the remaining assets. |

Page 1 of 1

NIC Home  |  FAQ  |  Help  |  Contact Us

Case 19-42329-BDL   Doc 35-1   Filed 10/25/19   Ent. 10/25/19 16:23:29   Pg. 5 of 21

14.



WASHINGTON MUTUAL
Loan Servicing
P.O. Box 91006, SAS0304
Seattle, WA 98111

State of Washington

 **Washington Mutual**
⊞ Washington
    Mutual

**DEED OF TRUST**

THIS DEED OF TRUST ("Security Instrument") is made on October 13th, 1998.
The grantor is ERICKA A MICHAL, an unmarried individual

("Borrower"). The trustee is TRANSNATION, an Arizona Corporation
("Trustee"). The beneficiary is WASHINGTON MUTUAL BANK, a
Washington Corporation which is organized and existing under the laws of Washington
_____, and whose address is 1201 THIRD AVENUE, SEATTLE, WA 98101
_____ ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED THIRTEEN THOUSAND FORTY-FOUR & 00/100---
_____ Dollars (U.S. $ 113,044.00 ). This debt is evidenced by
Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments,
with the full debt, if not paid earlier, due and payable on November 1st, 2028 . This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in
PIERCE_____ County, Washington:
THE SOUTH 109 FEET OF THE EAST HALF OF LOT 2, BLOCK 6 OF CLARKSCREEK
ADDITION, AS PER PLAT RECORDED IN VOLUME 12 OF PLATS, PAGE 24, RECORDS OF
PIERCE COUNTY AUDITOR; SITUATE IN THE CITY OF PUYALLUP, COUNTY OF PIERCE,
STATE OF WASHINGTON.

TRANS
NATION
OCT 16 1998

which has the address of 1627 6TH AVE SW_____,
                                              [Street]
PUYALLUP_____, Washington 98371_____ ("Property Address");
        [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims
and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Washington Deed of Trust (10/95)
2333A (02-97)                                    Page 1 of 5

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that the Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note;

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any

9810160480
Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:
   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within eight months from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any

9810160480

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by applicable law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the

9810160480

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

Case 19-42329-BDL   Doc 35-1   Filed 10/25/19   Ent. 10/25/19 16:23:29   Pg. 9 of 21

truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any reconveyance costs.

20. **Substitute Trustee.** In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Use of Property.** The Property is not used principally for agricultural or farming purposes.

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider     ☐ Planned Unit Development Rider     ☐ Growing Equity Rider
☐ Graduated Payment Rider     ☐ Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

x _Ericka A. Michal_
ERICKA A MICHAL

STATE OF WASHINGTON

            ss:

County of Pierce

I certify that I know or have satisfactory evidence that ERICKA A MICHAL

is the person who appeared before me, and said person acknowledged that he/she signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 10/14/98           _Tamara Tissie_

(Seal or Stamp)            Signature
                      Residing at Sumner

My Appointment Expires: 4/9/       Notary       Title

REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

            WASHINGTON MUTUAL BANK
                   a corporation

DATED: _____      By _____

FHA Washington Deed of Trust (10/95)                Page 5 of 5
2353E (02-97)

9810160480

Reviewer ID: Douglas Theener_2019-10-23_13:07:48

RECORD AND RETURN TO:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA 92799-7670
ATTN: LMTS

_____ [Space Above this Line for Recording Data] _____

# LOAN MODIFICATION AGREEMENT

Borrower ("I")[1] :  ERICKA A MICHAL, AN UNMARRIED INDIVIDUAL

Lender ("Lender"): JPMorgan Chase Bank, as further defined in the Addendum, which is attached hereto and incorporated herein**
Date of First Lien Security Instrument (the "Mortgage") and Note (the "Note"): OCTOBER 13, 1998
██████████████████ (the "Loan")
Property Address:  1627 6TH AVENUE SW
                   PUYALLUP, WASHINGTON 98371                      (the "Property")
Legal Description:
THE SOUTH 109 FEET OF THE EAST HALF OF LOT 2, BLOCK 6 OF
CLARKSCREEK ADDITION, AS PER PLAT RECORDED IN VOLUME 12 OF
PLATS, PAGE 24, RECORDS OF PIERCE COUNTY AUDITORL SITUATE IN
THE CITY OF PUYALLUP, COUNTY OF PIERCE STATE OF WASHINGTON

Recording Information of Mortgage:  Instrument No. 981016480
of the    Official    Records of  PIERCE County              , State of   WASHINGTON                .

---

[1]  If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**LOAN MODIFICATION AGREEMENT**                                    *(page 1 of 7 pages)*
FALPS# CHASEHF400 Rev. 08-10-09                                    WF101 v26

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1. **My Representations.** I represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, am either in default under the Loan Documents or a default is imminent.

   B. The Property is neither in a state of disrepair, nor condemned.

   C. There has been no change in the ownership of the Property since I signed the Loan Documents.

   D. I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

   E. I have provided documentation for all income that I earn.

   F. All documents and information I provide pursuant to this Agreement are true and correct.

2. **The Modification.** The Loan Documents are hereby modified as of MARCH 13, 2010 (the "Modification Effective Date"), and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

   A. The Maturity Date will be: APRIL 1, 2040

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts towards taxes, insurance , or other assessments. The new principal balance of my Note is $ 132,012.43 (the "New Principal Balance").

   C. Interest will begin to accrue as of APRIL 1, 2010 . The first new monthly payment on the New Principal Balance will be due on MAY 1, 2010 , and monthly on the same day thereafter.

   My payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT
FALPS# CHASEHF400-2 Rev. 08-10-09

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

I promise to pay interest on the New Principal Balance at the rate of 5.500 % annually. I promise to make consecutive monthly payments of principal and interest in the amount of $ 749.55 , which is an amount sufficient to amortize the New Principal Balance over a period of 360 months.

The above terms in this section 2.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for an adjustable or step interest rate.

D.   I agree to pay in full (i) the New Principal Balance, and (ii) any other amounts still owed under the Loan Documents by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E.   I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in section 2.C.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

3. **Additional Agreements.** I agree to the following: 

A. That this Agreement shall supersede the terms of any modification, forbearance or workout plan, if any, that I previously entered into with the Lender.

B. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C. That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated, or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48



J.   That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement.  If the Lender subsequently determines that such representations or documentation were not truthful or accurate,  the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

In Witness Whereof, the Lender and I have executed this Agreement.

WASHINGTON MUTUAL BANK
Lender                                                _____ (Seal)
                                                        Borrower
                                                        ERICKA A MICHAL

Lender's Signature                              05/12/2010
                                                        Date

3/15/2010
Date


By:  WASHINGTON MUTUAL BANK
Lender                                                _____ (Seal)
                                                        Borrower


Lender's Signature                              _____
                                                        Date


_____
Date


LOAN MODIFICATION AGREEMENT                         *(page 5 of 7 pages)*
FALPS# CHASEHF400-5 Rev. 08-10-09                      WF101 v26

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

_____(Seal)
Borrower

_____
Date
_____(Seal)
Borrower

_____
Date
_____(Seal)
Borrower

_____
Date
_____(Seal)
Borrower

_____
Date

_____[Space Below This Line For Acknowledgement in Accordance with Laws of Jurisdiction]_____

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

[Space Below This Line For Acknowledgment]

**BORROWER ACKNOWLEDGMENT**

State of Washington

County of _____Pierce_____

I certify that I know or have satisfactory evidence that _____
ERICKA A MICHAL

is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the users and purposes mentioned in the instrument.

Dated _____3-12-10_____

(Seal or stamp)

Notary Public
State of Washington
SHERIE A KNIGHT
My Appointment Expires Aug 24, 2011

_____Sherie a Knight_____
(Signature)

_____Notary_____
Title

My appointment expires _____8-24-2011_____

**LENDER ACKNOWLEDGMENT**

STATE OF _Florida_          COUNTY OF _Duval_

The foregoing instrument was acknowledged before me this _3/13/2010_ by
PATRICK MCGROARTY _____, the _____VICE PRESIDENT_____
of _CHASE_

a _____, on behalf of said entity.

Signature of Person Taking Acknowledgment _____Latressa Hamilton_____

Printed Name _____LATRESSA AILEEN HAMILTON_____

Title or Rank _____Notary Public, State of Florida_____
My Comm. exp. Jan. 14, 2013

Serial Number, if any _____Comm. No. DD 851774_____

LOAN MODIFICATION AGREEMENT
FALPS# WACHASEHF400-7 Rev. 08-10-09

(page 7 of 7 pages)
WF101 v26

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48



## ADDENDUM TO LOAN MODIFICATION AGREEMENT

THIS ADDENDUM is made this 13TH day of MARCH, 2010 and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement made by the undersigned (the "Borrower") in favor of WASHINGTON MUTUAL BANK

(the "Lender") and dated the same date as this Addendum (the "Agreement").

The Borrower and the Lender enter into the Agreement with reference to the following stipulated fact:

Pursuant to a Purchase and Assumption Agreement dated September 25, 2008, JPMorgan Chase Bank, National Association acquired loans and certain other assets of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as receiver, including but not limited to the Note and Security Instrument referenced in the Agreement. Although your loan was acquired by JPMorgan Chase Bank, your loan will continue to be serviced under the name "Washington Mutual" and you will make your payments to Washington Mutual.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_____  
Borrower  
ERICKA A MICHAL

_____  
Borrower

_____  
Borrower

_____  
Borrower

_____  
Borrower

_____  
Borrower

FALPS# JPMCB.ADD Rev. 01-15-09          Page 1 of 1

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

Date: **MARCH 13, 2010**

▮▮▮▮▮▮▮▮

Lender: **WASHINGTON MUTUAL BANK**

Borrower: **ERICKA A MICHAL**

Property Address: **1627 6TH AVENUE SW**
**PUYALLUP, WASHINGTON 98371**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     03/12/2010
Borrower                                                          Date
**ERICKA A MICHAL**

_____     _____
Borrower                                                          Date

_____     _____
Borrower                                                          Date

_____     _____
Borrower                                                          Date

_____     _____
Borrower                                                          Date

_____     _____
Borrower                                                          Date

First American Loan Production Services                    Notice of No Oral Agreements
©2008 First American Real Estate Solutions LLC
FALPS# FAND033 Rev. 12-10-08

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48

Date:  **MARCH 13, 2010**

Lender:  **WASHINGTON MUTUAL BANK**

Borrower:  **ERICKA A MICHAL**

Property Address:  **1627 6TH AVENUE SW**
**PUYALLUP, WASHINGTON 98371**

# ERRORS AND OMISSIONS
## COMPLIANCE AGREEMENT

In consideration of **WASHINGTON MUTUAL BANK**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.  Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____                                    03/12/2010
ERICKA A MICHAL                                                                          Date

_____
                                                                                               Date

_____
                                                                                               Date

_____
                                                                                               Date

_____
                                                                                               Date

_____
                                                                                               Date

First American Loan Production Services
©2008 First American Real Estate Solutions LLC
FALPS# FAND034 Rev. 12-10-08

Errors and Omissions Compliance Agreement

Reviewer ID: Douglas_Theener_2019-10-23_13:07:48



20120725xxxx MCKENZ
07/25/2012 11:14:40 AM $14.00
AUDITOR, Pierce County, WASHINGTON

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 10/13/1998 and executed by ERICKA A. MICHAL, there and with TRANSNATION as Original Trustee, to WASHINGTON MUTUAL BANK and recorded 10/16/1998 in Book n/a, Page n/a, and/or Instrument # 9810160480 in the office of the Recorder of PIERCE County, WA. Modification: DT 02/04/2002 REC DT 05/15/2002 INST 200205150218

LOT 2 BLK 6 CLARKSCREEK ADN VOL 12 PG 24

Tax Code/PIN: Parcel ID #: 3055000555

Property more commonly known as: 1627 6TH AVE SW., PUYALLUP, WA 98371

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on __07 / 06__ /2012 (MM/DD/YYYY).
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact (POA RECORDED: 11/21/2011 DOC#: 20111121) POA RECORDED: 11/21/2011 DOC#: 20111121

By: _Jalessia Moore_
_Jalessia Moore_
VICE PRESIDENT

STATE OF LOUISIANA    PARISH OF OUACHITA

On __07/06__ /2012 (MM/DD/YYYY), before me appeared _Jalessia Moore_, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Helen P. Tubbs_
_Helen P. Tubbs_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152



Reviewer ID: Douglas_Theener_2019-10-23_13:07:48